1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JENNIFER W.[1],                          No.  2:24-cv-01957-CKD

12                   Plaintiff,

13          v.                                ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying applications for Disability Income Benefits ("DIB") and

20   Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

21   ("Act"), respectively.  The parties have consented to magistrate judge jurisdiction.  For the

22   reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant

23   the Commissioner's cross-motion for summary judgment.

24   BACKGROUND

25          Plaintiff, born in 1981, applied for DIB and SSI on February 5, 2018, alleging disability

26   beginning May 1, 2015.  Administrative Transcript ("AT") 454, 2249.  Plaintiff alleged she was

27

28   [1] Plaintiff's full name is redacted for privacy reasons by court order.

unable to work due to anxiety, trauma, ADHD, and depression.  AT 455.  On December 18, 2020, an Administrative Law Judge (ALJ) issued a decision finding plaintiff not disabled between the alleged onset date of May 1, 2015 and the date of the decision.  AT 203-212.  After additional administrative review, ALJ Sara Gillis issued a second decision on November 15, 2021 finding plaintiff not disabled during the period of May 1, 2015 through the date of the decision.  AT 15-38.  After the Appeals Council affirmed this decision, plaintiff filed a complaint in District Court; on October 5, 2022, the parties stipulated to remand the case for further proceedings.  AT 2318-2319.  On March 18, 2024, ALJ Gillis issued a third decision, finding plaintiff not disabled during the period of May 1, 2015 through the date of the decision.  AT 2194-2208.  Plaintiff challenges this decision in the instant case.

In the March 18, 2024 decision, the ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has engaged in substantial gainful activity since May 1, 2015, the alleged onset date.
>
> 2. The claimant has the following severe impairments: mood disorder; anxiety disorder; schizophrenia; polysubstance abuse disorder; post-traumatic stress disorder (PTSD); personality disorder; and attention deficit hyperactivity disorder (ADHD).
>
> 3. Including the claimant's substance use, the severity of the claimant's impairments met the criteria of section 12.03 of 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's abilities to perform basic work activities; therefore, the claimant would have a severe impairment or combination of impairments.
>
> 5. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 6. After careful consideration of the entire record, the undersigned finds that, if the claimant stopped the substance abuse, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine tasks; able to concentrate, persist, and maintain pace for 2 hour increments over an 8-hour period; occasionally deal with changers in the workplace; and occasionally interact with the public and coworkers.

7.  The claimant is still unable to perform past relevant work.

8.  The claimant has at least a high-school education.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

10.  If the claimant stopped the substance abuse, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The substance abuse disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he [sic] stopped the substance use.[2]  Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

AT 2197-2208.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) the ALJ erred in evaluating the medical evidence; (2) the ALJ erred in evaluating plaintiff's subjective statements; (3) the ALJ erred in determining that substance abuse is material to a finding of disability; (4) and the ALJ erred in assessing plaintiff's residual functional capacity.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

---

[2] Citing 20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935.

1  responsible for determining credibility, resolving conflicts in medical testimony, and resolving

2  ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

3  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

4  rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

5         The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

6  Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

7  conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

8  affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see

9  also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

10 administrative findings, or if there is conflicting evidence supporting a finding of either disability

11 or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

12 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

13 weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

14 ANALYSIS

15        As a preliminary matter, the ALJ's decision notes that plaintiff "is requesting a closed

16 period decision from May 1, 2015 through June 30, 2018." AT 2194.  At the January 4, 2024

17 hearing before ALJ Gillis, plaintiff confirmed that was the period at issue.  AT 2247.  Thus, the

18 court will focus on that period of alleged disability.

19        Plaintiff testified at the hearing that she had been sober for over five years, since

20 September 2018.  AT 2252.  Explaining his argument concerning the period at issue, plaintiff's

21 attorney stated:

22        ATTY: This onset, you know, with the 2015 – I mean, we're looking
           at multiple rehabs during this period, Cura, Chrysalis, Serenity
23         House, and that's like the 2015 to 2018 period where she was
           attempting, you know, doing periods of sobriety, having issues with
24         these programs, relapsing[.] . . . [S]o while she was using, for sure,
           there was some obvious symptom exacerbation, particularly in terms
25         of psychotic symptoms.  But you know, there was also treating . . .
           obviously maladaptive coping strategy, but . . . treating underlying
26         ADHD, PTSD, and anxiety.

27 AT 2259-2260.

28        Similarly, plaintiff asserts in her briefing:

                                            4

> Plaintiff agrees that her prior substance abuse aggravated her psychotic symptoms, leading to her frequent arrests and hospitalizations. However, . . . psychosis is not the primary basis for her disability, but rather anxiety, poor focus, and panic attacks, consistent with her past diagnoses of generalized anxiety disorder with panic attacks, ADHD, and PTSD.

(ECF No. 20 at 4.)

Put simply, this case involves teasing out plaintiff's substance abuse-related symptoms from her other mental symptoms, as it relates to disability during the three-year period at issue. Defendant argues that the ALJ's evaluation of this issue was proper and should be affirmed.

A. Medical Evidence

Plaintiff argues that the ALJ erred in rejecting or partially rejecting (1) the 2019 opinion of clinical recovery counselor Aminata Fielder, and (2) the 2021 opinion of examining psychologist Dr. Katherine Wiebe.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

For disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Because plaintiff filed her application in 2018, it is subject to the new rules for the evaluation of medical evidence.

The revised rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and

consistency.  20 C.F.R. § 416.920c(b)(2).  Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations.  20 C.F.R. § 416.920c(c)(1).  Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves.  20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1).  The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b).  The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court."  Sam-Chankhiao v. Kijakazi, 2:20-cv-0186 DB, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022), citing Hardy v. Commissioner, 554 F.Supp.3d 900, 906 (E.D. Mich. 2021).

　　1.  Ms. Fielder

　　　　Ms. Fielder was plaintiff's clinical counselor at Chrysalis Recovery Center, where she treated plaintiff once a week for six months.  AT 78-79.  On June 19, 2019[3], Ms. Fielder filled out a Medical Impairment Questionnaire in which she opined that plaintiff had extreme limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; work with or near others without being unduly distracted or distracting them; and deal with normal work stress.  AT 1778.  Ms. Fielder further opined that plaintiff had marked limitations in the ability to: maintain attention for two-hour segments; maintain regular attendance and be punctual; perform at consistent pace without unreasonable rest periods; sustain an ordinary routine without special supervision, and respond appropriately to changes in the work setting.  AT 1778.  She also found plaintiff to have moderate mental limitations in some areas.  AT 1778.

---

[3] Notably, Ms. Fielder's opinion was issued a year after the period of alleged disability ended on June 30, 2018.  Its probative value of plaintiff's mental condition during the relevant period is somewhat limited.

1    Ms. Fielder opined that plaintiff's impairments would interfere with her concentration or pace

2    of work 50 percent of the time and cause her to miss work about one day per month.  AT 1779.

3    To the question, "Would the patient's impairments remain as severe in the absence of substance

4    abuse?", Ms. Fielder answered: "Yes."  AT 1779.  She added that plaintiff "tends to be come

5    overwhelmed easily."  AT 1779.

6    The ALJ evaluated this opinion as follows:

> The undersigned finds Ms. Fielder's opinions and [sic] persuasive,
> as it is unclear whether her opinions refer to the claimant's
> limitations while under the influence or sober.  The undersigned finds
> that Ms. Fielder's opinions, if they are intended to refer to the
> claimant's condition when sober, are not consistent with or supported
> by the longitudinal evidence of record, which generally reflects no
> more than mild to moderate limitations in the claimant's ability to
> function cognitively or socially.  The record repeatedly reflects that
> the claimant's mental conditions significantly improved during
> periods of sobriety and often reflected only mild findings at mental
> status examinations.

13   AT 2206.

14   Plaintiff argues that the ALJ did not address Ms. Fielder's statement that plaintiff's

15   impairments would be as severe in the absence of substance abuse.  However, the ALJ assumed

16   for purposes of evaluation that Ms. Fielder's opinion concerned plaintiff during a period of

17   sobriety.  As both Ms. Fielder and the ALJ were considering plaintiff's "condition when sober,"

18   the question is whether the ALJ sufficiently addressed the supportability and consistency factors.

19   The ALJ found that Ms. Fielder's opinions "are not consistent or supported by the

20   longitudinal evidence of record," which "repeatedly reflects that the claimant's mental conditions

21   significantly improved during periods of sobriety and only reflected mild findings at mental status

22   examinations."  AT 2206.  Summarizing the medical evidence earlier in the opinion, the ALJ

23   noted multiple events in the 2015-2018 timeframe in which plaintiff initially presented with

24   severe mental symptoms (in an emergency room, psychiatric facility, rehab facility, etc.), but

25   once the drug effects wore off, had largely normal mental status examinations.  AT 2198-2199,

26   citing AT 651-652, 727, 883, 897, 902, 959 (July 2018 normal mental status exam noting

27   plaintiff's statement: "I am doing fine now. I was just high" the previous day), 1662, 1675, 1677-

28   1678, 1691, 1708 (September 2017 note that plaintiff had been sober 14 months before relapsing

7

1 | and "talked about how she was able to work two jobs while sober"), 1711.

2 |      "Over the course of the claimant's emergency room visits," the ALJ wrote in a summary

3 | of the medical evidence, "she repeatedly had improvement of her symptoms as the effects of the

4 | drugs and alcohol subsides." AT 2202. The ALJ discounted Ms. Fielder's opinion that plaintiff

5 | had multiple marked and extreme mental symptoms that would "remain as severe" in the absence

6 | of substance abuse, reasoning that this opinion was not supported by or consistent with the

7 | longitudinal medical record. The ALJ provided sufficient rationale for the court to review,

8 | supported by substantial evidence, and the court finds no error on this basis.

9 |     2.  <u>Dr. Wiebe</u>

10 |      Dr. Katherine Wiebe conducted a psychological evaluation of plaintiff in May 2021,

11 | nearly three years after the period of alleged disability ended.[4] AT 2047-2060. Dr. Wiebe opined

12 | that plaintiff had moderate impairment in attention and concentration; mild impairment in

13 | memory and sensory-motor functioning; and normal executive, language, and overall intellectual

14 | abilities. AT 2059.

15 |    Dr. Wiebe further opined that plaintiff had multiple mental impairments related to "the

16 | demands of an employment situation," stating:

17 |
18 |        She has problems with social interactions and would have difficulties relating to others, including co-workers, the public, and supervisors, in a workplace on a consistent basis.

19 |        . . .

20 |
21 |        Her cognitive, psychiatric, and Personality Disorder symptoms would make it difficult for her to perform in a regular full time job.

22 | AT 2059.

23 |    The ALJ evaluated this opinion as follows:

24 |
25 |        The undersigned finds Dr. Wiebe's opinions partially persuasive, as they are generally consistent with and supported by the longitudinal evidence of record, which reflect that the claimant has ongoing
26 |        limitations in her ability to maintain focus, interact with others, and

27 |     [4] At that time, plaintiff reported that she had worked at Costco for about a year, working 25 to
28 | 32 hours a week. AT 2049. She reported that she had last used methamphetamine and marijuana in 2018. AT 2051.

deal with usual stressors encountered in a work environment, even during periods of sobriety. However, the undersigned finds insufficient evidence in the record to support a marked impairment in any area while the claimant is sober. The claimant is able to maintain employment above the threshold for substantial gainful activity and has generally only mild findings at mental status examinations during periods of sobriety.

AT 2201; see also AT 2205 (ALJ notes that "the claimant has been sober since approximately 2018 and has been able to maintain employment beyond the threshold for substantial gainful activity during that time."[5]).

Plaintiff argues that the ALJ erred in rejecting the presence of moderate to marked impairments assessed by Dr. Wiebe, citing evidence that plaintiff continued to have anxiety and panic attacks after three years' sobriety and had trouble getting along with co-workers and supervisors. This is essentially an attempt to reweigh the evidence in plaintiff's favor. As discussed above, ample evidence supports the ALJ's conclusion that Dr. Wiebe's 2021 opinion is not entirely consistent with the longitudinal record during the years of 2015 to 2018, when plaintiff was repeatedly found to have mild or normal mental findings when sober.

Plaintiff's ability to sustain employment—albeit with some difficulty—in the 2019-2021 period also supports the ALJ's discounting of Dr. Wiebe's opinion insofar as it suggests plaintiff was mentally incapable of working. See Ford v. Saul, 950 F.3d 1141, 1156 (9th Cir. 2020) (affirming ALJ finding that medical opinion was inconsistent with plaintiff's job, "which demonstrated ability to sustain a work schedule, tolerate work-related stress, and perform simple tasks"), citing Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992).

As in the other medical opinion claim, the ALJ provided sufficient rationale for the court to review, supported by substantial evidence, and the court finds no error on this basis.

B. Subjective Statements

Plaintiff claims the ALJ erred in discounting plaintiff's subjective symptom testimony by failing to provide clear and convincing reasons linked to specific evidence. Defendant argues that the ALJ reasonably discounted plaintiff's subjective symptoms because they were not entirely

---

[5] Citing AT 2420 (earnings records indicating that plaintiff earned $9,353.80 in 2018; $25,738.26 in 2019; $27,114.31 in 2020; and $24,293.37 in 2021).

2c739adcdee44033

consistent with the objective medical and treatment evidence.

The ALJ summarized plaintiff's testimony at the January 4, 2024 hearing as follows:

> The claimant alleges that she is disabled due to a combination of mental impairments. She reports a period of mental instability beginning in 2014, caused by significant life stressors. She reports that, during the period of 2015 through June 2018, she had extreme anxiety and poor focus due to ADHD. She reported that she was unable to complete tasks. She reports panic attacks, during which her mind would race. She reports a history of verbal altercations with coworkers and managers. She suffered from addiction issues and reported that she has been sober since September 2018. She reports a dramatic improvement in her symptoms with medication and treatment. She is currently working and reports that when she is exposed to triggers, she is better able to manage due to behavioral therapy techniques.

AT 2197-2198, citing AT 2247-2266.

The ALJ found plaintiff to have multiple severe mental impairments consisting of mood disorder, anxiety disorder, schizophrenia, PTSD, personality disorder, and ADHD. AT 2197. The assessed RFC includes several non-exertional limitations, corresponding in some degree to plaintiff's subjective testimony. AT 2205. However, in finding that plaintiff's mental impairments did not preclude all work, the ALJ discounted her testimony to some extent, explaining as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent. The claimant alleges that she is completely disabled due to her mental impairments. The evidence of record reflects that the claimant had frequent arrests and hospitalizations due to erratic behavior caused by substance abuse. However, once the claimant metabolized the substances in her body, her conditions significantly improved each time, with only mild to moderate findings at mental status examinations during periods of sobriety. The consultative examinations indicated that the claimant is of average intelligence, had moderate limitations focusing, and was calm and cooperative.[6] Further, the claimant has been sober since approximately 2018, and has been able to maintain employment beyond the threshold for substantial gainful activity during that time. Based on the longitudinal evidence, the undersigned finds that the claimant's mental impairments do not preclude the claimant from performing work, during periods of sobriety.

AT 2205.

---

[6] Citing AT 1780-1791 (July 2019 evaluation by Dr. Parisa Shoja) and AT 2047-2063 (May 2021 evaluation by Dr. Katerine Wiebe).

1          The ALJ determines whether a disability applicant is credible, and the court defers to the

2    ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

3    Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an

4    explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without

5    affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for

6    rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of

7    Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266,

8    1277–78 (9th Cir. 2020).

9          In evaluating whether subjective complaints are credible, the ALJ should first consider

10   objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

11   344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

12   then may consider the nature of the symptoms alleged, including aggravating factors, medication,

13   treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the

14   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

15   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

16   prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

17   1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

18   01; SSR 88-13.  When discounting subjective testimony, an ALJ must provide "specific, clear,

19   and convincing *reasons* for doing so."  Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021)

20   (emphasis in original), citing Lambert, 980 F.3d at 1277–78.  This standard does "not require

21   ALJs to perform a line-by-line exegesis of the claimant's testimony[.]"  Lambert, 980 F.3d at

22   1277.  However, an ALJ's detailed overview of the claimant's medical history—coupled with a

23   nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical

24   treatment—is not enough to satisfy the minimal requirements for assessing credibility.  Id. at

25   1277–78.

26          Here, the ALJ considered the objective medical evidence of mental impairment, including

27   "mild to moderate findings at mental status examinations during periods of sobriety."  See AT

28   2198-2200.  The ALJ also considered a 2019 consultative psychological evaluation by Dr. Shoja,

11

1    who found plaintiff to present normally and have no significant mental limitations in several

2    areas, with some mild and moderate limitations.  This evidence reasonably can be said to

3    undercut plaintiff's claims that her mental symptoms were so severe as to preclude all work.  The

4    ALJ also cited plaintiff's demonstrated ability to maintain work after achieving sobriety, which

5    could be viewed as inconsistent with her testimony that she was unable to work, regardless of

6    sobriety.

7         Because the ALJ used the proper process and provided proper reasons, the court defers to

8    her credibility determination.

9         C.  Substance Abuse Material to Finding of Disability

10        Plaintiff claims that the ALJ erred in finding at step five that "the substance use disorder is

11   a contributing factor material to the determination of disability[.]"  AT 2208.

12        The ALJ determined polysubstance abuse disorder to be among plaintiff's severe

13   impairments.  AT 2197.  Based on vocational expert testimony on plaintiff's assessed RFC,

14   including multiple mental limitations, the ALJ concluded that "if the claimant stopped substance

15   use, [she] would be capable of making a successful adjustment to work that exists in significant

16   numbers in the national economy."  AT 2208.

17        If it is found that the applicant is disabled under the five-step process and there is medical

18   evidence of a substance use disorder, including drug addiction or alcoholism ("DAA"), then the

19   ALJ must perform an additional step to determine whether the substance use disorder is a

20   contributing factor material to the determination of disability.  See 20 C.F.R. §§ 404.1535,

21   416.935.  The Social Security Act provides that a claimant "shall not be considered to be disabled

22   ... if alcoholism or drug addiction would ... be a contributing factor material to the ...

23   determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).  In determining whether

24   a claimant's DAA is material, the test is whether an individual would still be found disabled if he

25   or she stopped using drugs or alcohol. See 20 C.F.R. §§ 404.1535(b), 416.935(b); Parra v. Astrue,

26   481 F.3d 742, 746–47 (9th Cir. 2007); Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998).

27   It is plaintiff's burden to show her substance abuse is not material to a finding of disability.

28   Parra, 481 F.3d at 748.

1      Here, in light of substantial evidence (discussed throughout the ALJ's decision) that

2  plaintiff's mental symptoms improved considerably when sober and she was able to maintain

3  employment after her sobriety date, plaintiff has not shown that substance abuse is not material.

4  See, e.g., AT 2201 (in assessing Dr. Wiebe's report, ALJ "finds insufficient evidence in the

5  record to support a marked impairment in any area while the claimant is sober.").  The ALJ

6  reasonably relied on VE testimony that, even with mental limitations unrelated to substance

7  abuse, as reflected in the RFC, plaintiff could perform jobs such as cleaner, hand packager, and

8  dishwasher.  AT 2208.  Plaintiff has not shown error on this basis.

9      D.  Residual Functional Capacity

10     Lastly, plaintiff claims that the ALJ erred by not including in the RFC a limitation in

11  interacting with supervisors, along with its limitation to occasional interaction "with the public

12  and coworkers."  Plaintiff cites her "history of conflict at work, not just with coworkers and

13  customers, but with management as well."  (ECF No. 13 at 23.)

14     At the January 4, 2024 hearing, plaintiff testified that she had experienced conflicts with

15  supervisors in several jobs, and had trouble keeping jobs for more than a few months.  AT 2261-

16  2264.  However, she was currently employed at Starbucks, which offered accommodations and

17  support for her mental health challenges.  AT 2261.

18     Plaintiff's attorney asked the VE if there was "any employment for someone who is

19  unable to respond to conflict with supervisors without exhibiting behavioral extremes?"  AT

20  2268-2269.  The VE responded: "Yeah.  Of course.  It depends on the employer.  It depends on

21  whether there is accommodation.  It depends on what the extremes are.  But as a general rule,

22  behavioral extremes in the workplace are reason for termination."  AT 2269.

23     In her decision, the ALJ noted plaintiff's reported "history of verbal altercations with

24  coworkers and managers."  AT 2197.  The ALJ also noted that, in April 2017, during the period

25  of alleged disability, she had a waitressing job which she described as "not too bad"; in April

26  2018, she was working 35 hours a week at Buffalo Wild Wings.  AT 2199, citing AT 1722, 1725.

27  The ALJ found plaintiff to have moderate limitations in interacting with others, noting that, since

28  achieving sobriety, "[s]he has been able to return to work, which has included a role as a server,

1    requiring her to interact with supervisors, coworkers, and customers."  AT 2203 (citing hearing

2    testimony).  However, in reviewing the medical opinion evidence, the ALJ found that, even

3    during periods of sobriety, plaintiff "had moderate or ongoing issues with irritability and

4    difficulty getting along with others."  AT 2207.

5         As to limitations on interacting with others, the ALJ found the February 2020 testimony

6    of medical expert Dr. Joseph Malancharuvil persuasive.  At the second hearing on plaintiff's

7    claims, Dr. Malancharuvil opined that, "when the claimant is sober, she has a mild to moderate

8    limitation in her ability to interact with others . . . He opined that she should avoid emotionally-

9    charged situations, but is capable of common transactions with people."  AT 2206, citing AT 86-

10   87.  Specifically, Dr. Malancharuvil testified:

11            As long as she's not interacting in an emotional job situation, such
              as being a complaint taker or problem solver for others, she's okay
12            in ordinary transactions.  She's easily irritated by people and their
              reactions.  So, while she should not be working as a receptionist, or
13            complaint taker or problem solver, she is capable of ordinary
              commonplace transactions with people.  . . . [S]he certainly will
14            function fine in object-oriented work.

15   AT 87.

16        Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for

17   assessing residual functional capacity.  SSR 96-8p.  Residual functional capacity is what a person

18   "can still do despite [the individual's] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a) (2003);

19   see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity

20   reflects current "physical and mental capabilities").  RFC is assessed based on the relevant

21   evidence in the case record, including the medical history, medical source statements, and

22   subjective descriptions and observations made by the claimant, family, neighbors, friends, or

23   other persons.  20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3).  When assessing RFC, the ALJ must

24   consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of

25   work[.]"  20 C.F.R. §§ 404.1545(a)(4).

26        Here, the ALJ found plaintiff moderately limited in interacting with others, which she

27   translated into an RFC for  "simple, routine tasks" and occasional interactions with "the public

28   and coworkers."  In a similar case, a court in this district rejected the argument that the ALJ erred

14

1  by not including a limited ability to interact with supervisors in the RFC, reasoning that "the

2  Ninth Circuit and courts in this circuit have concluded a limitation to 'simple tasks' . . .

3  adequately encompasses moderate limitations with respect to social functioning."  Garcia v.

4  Comm'r, No. 1:21-cv-01799-SAB, 2023 WL 4162766, *13 (E.D. Cal. June 22, 2023) (collecting

5  cases).  Moreover, there is ample evidence that plaintiff could function without "behavioral

6  extremes" while sober, in addition to Dr. Malancharuvil's opinion that she could engage in

7  "common transactions with people" in an object-oriented job.  The VE identified object-oriented

8  jobs that did not involve being a "complaint taker or problem solver," i.e., cleaner, hand packager,

9  and dishwasher.  Thus, plaintiff's assessed RFC was adequately explained and grounded in

10  substantial evidence.

11  CONCLUSION

12       For the reasons stated herein, IT IS HEREBY ORDERED that:

13       1.  Plaintiff's motion for summary judgment (ECF No. 13) is denied;

14       2.  The Commissioner's cross-motion for summary judgment (ECF No. 17) is granted;

15  and

16       3.  Judgment is entered for the Commissioner.

17  Dated:  September 16, 2025

18                                           CAROLYN K. DELANEY

19                                           UNITED STATES MAGISTRATE JUDGE

20

21

22

23  2/jennw1957.bothdibssi.ckd

24

25

26

27

28